# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| ZEB HOLLIER, ET AL | CIVIL ACTION NO. 08-1382 |
| VERSUS | JUDGE MELANÇON |
| WILLSTAFF WORLDWIDE, INC., ET AL | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Before the Court are plaintiffs' Motion for Remand and for Attorneys' Fees [Rec. Doc. 10], G.W. Premier America, Inc.'s ("G.W. Premier") Memoranda in Opposition thereto [Rec. Doc. 14 & 16], plaintiffs' Response to G.W. Premier's Memoranda [Rec. Doc. 21], and G.W. Premier's Motion to Continue Hearing on plaintiffs' Motions [Rec. Doc. 22]. Also before the Court are G.W. Premier's Motion for Discovery [Rec. Doc. 23] and Motion for Leave to File Motion for Jurisdictional Discovery [Rec. Doc. 24], plaintiffs' Memorandum in Opposition to Motion for Leave to File Motion for Jurisdictional Discovery [Rec. Doc. 26], and G.W. Premier's Motion for Leave to file Reply Brief [Rec. Doc. 27].

At the outset, the Court notes that it is not apparent how G.W. Premier is or could be, in any way, connected to this action. Plaintiffs' Complaint [Rec. Doc. 1-5] clearly spells out that the defendants are (1) Jarred Gage, a purported resident of the State of Louisiana, and (2) Willstaff Worldwide, Inc., a domestic corporation authorized to do and doing business in Louisiana. *Complaint* [Rec. Doc. 1-5], pg. 1. Without further explanation, G.W. Premier removed this case to

this Court claiming that it was a diverse defendant incorrectly named as Willstaff Worldwide, Inc. and that this Court had jurisdiction as Jarred Gage was improperly joined and the amount in controversy exceeded $75,000. For the first time in its Motion to Conduct Jurisdictional Discovery [Rec. Doc. 23], G.W. Premier attempted to explain its connection to this proceeding by alleging that Willstaff Worldwide, Inc. was formally dissolved in 2004 and that Willstaff Worldwide is now merely a trade name employed by Willstaff, Inc., a wholly owned subsidiary of G.W. Premier.[1] The fact that G.W. Premier is or may be the "parent corporation" of Willstaff, Inc. is wholly irrelevant as Willstaff, Inc. is separate corporation with its own juridical personality. *See i.e. J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 413 (5th Cir. 1987) (*quoting Panalpina Welttransport GMBH v. Geosource, Inc., 764 F.2d 352, 354* (5th Cir. 1985) (holding that even if a subsidiary corporation is merely an alter ego of its parent, "the alter ego doctrine cannot be used to preserve diversity jurisdiction by ignoring the place of incorporation of the subsidiary and treating the subsidiary as if it were only a citizen of the state of incorporation of the dominant corporation")). For purposes of this ruling, the Court must consider whether it has jurisdiction to

---

[1] G.W. Premier also asserts that Jarred Gage could not have been an employee of Willstaff Worldwide, Inc. when the accident allegedly occurred as Willstaff Worldwide, Inc. was dissolved several years prior to the accident. Even if this is true, the affidavit of Wayne Williamson [Rec. Doc. 14-1], president of Willstaff, Inc., states "Jarred Gage was furnished by **Willstaff** to perform services at the direction and control of Key Energy Service, Inc." thus foreclosing the possible argument that Gage was an employee of G.W. Premier. (emphasis added).

decide the dispute arising solely between the actual parties to the case – Zeb and Wendy Hollier; Willstaff Worldwide, Inc., or, alternatively, Willstaff, Inc.; and Jarred Gage.

It is rudimentary that if Willstaff Worldwide, Inc. is a party to this litigation, the Court lacks jurisdiction as Willstaff Worldwide, Inc. was a Louisiana corporation with its principal place of business in Monroe, Louisiana. Assuming, *arguendo*, that Willstaff, Inc. is, in fact, the appropriate party to the litigation, the result is the same. In an affidavit attached to G.W. Premier's Opposition to Remand [Rec. Doc. 14-1], Willstaff, Inc.'s president, Wayne Williamson, states that Willstaff Worldwide is ". . . a trade name utilized by Willstaff, Inc.," and that Willstaff, Inc. is ". . . a Delaware corporation *with its principal office located at 328 Desiard Street, Monroe, Louisiana 71201*." *Affidavit of Wayne Williamson* [Rec. Doc. 14-1], pgs 1-2 (emphasis added).[2] The law on the citizenship of a corporation for the purposes of diversity jurisdiction could not be clearer nor more elementary. Title 28, Section 1332(c)(1) of the United States Code states that for the purposes of removal, ". . . a corporation shall be deemed to be a citizen of any State by which it has been incorporated <u>and</u> *of the State where it has its principal place of business*." 28 U.S.C. §1332(c)(1) (emphasis added). By G.W. Premier's own admission Willstaff, Inc.'s principal place of business is in Monroe, Louisiana

---

[2] A review of the Louisiana Secretary of State's Corporations Database, located at http://www400.sos.louisiana.gov/app1/paygate/crpinq.jsp, confirms this statement.

and, thus, by definition is a non-diverse defendant. If G.W. Premier actually had standing to contest the remand and were the Court to find that Jarred Gage was improperly joined, complete diversity would still not exist. Accordingly, plaintiffs' Motion to Remand [Rec. Doc. 10] will be granted.

Sadly, the Court is not surprised by G.W. Premier's counsels' tactics in this proceeding as Ungarino & Eckert, L.L.C.'s reputation proceeds it. This case is but one in a long line of fraudulent and improper removals that Ungarino & Eckert, and more specifically Matthew Ungarino, have filed in this and other districts. *See e.g. Fontentot v. Granite State Insurance Company*, 2008 WL 4822283 (W.D.La. 11/3/08) (awarding $2,500 in attorneys' fees to plaintiff due to improper removal and firm's history); *Saxton v. Thomas*, 2007 WL 1115239 (W.D.La. 4/12/07) (noting that "[a]lmost every notice of removal filed by the firm in recent years has been defective for one reason or the other, with the most common problems being failure to meet the minimal requirements of pleading the parties' citizenship and failure to plead or point to facts adequate to satisfy the amount in controversy requirement," and awarding plaintiffs $1,000 in legal fees for the improper removal) (*citing McClelland v. A.I.G. Ins. Co. Inc.*, 02-CV-822; *Century Surety Co. v. Hays Brothers Angus Ranch*, 04-CV-0010; *West v. State Farm*, 03-CV-1118; *Jackson v. Braden*, 04-CV-0313; *Pinkney v. Family Dollar*, 04-CV-1175; *Folks v. Goforth*, 05-CV-0215; *Woods v. Eckerd*, 05-CV-704; *Shyne v. Ryan's Family*

*Restaurant*, 05-CV-1190; *Evans v. Family Dollar*, 05-CV-1517; *and Atkinson v. Laich Industries Corp.*, 05-CV-966); *Saxon*, 2007 WL 1974914 at *5 (affirming a $1,000.00 award of attorneys' fees and costs to be paid by Ungarino & Eckert to defer the "firm from continuing to file poorly prepared, defective notices of removal."); *George v. Dolgencorp, Inc.*, 2007 WL 4678577 at *2 (recommending sanctions because defendant's attorneys [Ungarino and Eckert] continue to attempt to remove cases to this court relying on their boiler plate notice of removal form and no support for federal jurisdiction ..."); *George*, 2008 WL 103957 at *2 (declining to impose sanctions against the defendant's counsel, noting "the decision is a close one" and that "the Court's patience with mere conclusory allegations of jurisdiction from form removal documents, unsupported by any evidence outside the petition, is quickly running out"); *Hampton v. Fred's Stores of Louisiana*, 06-CV-721 (warning that "it is time for such poorly prepared notices of removals to stop" and that "future problems of this nature will be addressed in open court rather than through orders that spell out how to fix the mistakes counsel has made in a notice of removal" and that "the court will consider sanctions or other deterrents ..."); *Dailey v. Dollar General Stores*, 05-CV-1472 (remanding for lack of sufficient jurisdictional amount); *Miller v. Bolton*, 01-CV-799 (same); *Hebert v. Nationwide Mutual Insurance Co.*, 01-CV-367 (same); *Burgess v. Ryans Family Steakhouse, Inc.*, 07-CV-385 (same); *Edwards v. Fred's Inc.*, 05-

CV-288 (same); *Keyser Avenue Properties, LLC v. Fred's Stores of Tennessee, Inc.*, 06-CV-2199 (same); *Gatlin v. Dolengencorp., Inc.,* 05-CV-2114 (same); *Murray v. Oliver*, 05-CV-1964 (same); *Guin v. Family Dollar Stores, Inc.*, 00-CV-657 (same); *Demette v. Telecable Associates*, 02-CV-737 (recommending remand for lack of sufficient jurisdictional amount, but case settled prior to remand). See also *Johnese v. Guideone Mutual Insurance Co.*, 05-CV-1039-D-M3 (M.D.La.) (remanding for lack of sufficient jurisdictional amount); *Nodier v. Ungarino and Eckert, LLC*, 04-895-D-M3 (M.D.La.) (noting that "this is the second instance of this defendant removing a case of this type to this court without any legal basis for doing so" and accordingly awarding $5,101.25 in attorneys' fees and $199.00 in costs for improvident removal, but denying Rule 11 sanctions warning that "any similar action in the future will trigger a cause for sanctions."). A review of these cases reveals that counsel have been warned time and time again that continuing down the path of filing baseless removals would have dire consequences. In addition to stern warnings, counsel have been sanctioned and cast with attorneys' fees.

As troubling as counsels' cavalier approach to filing improvident removals is, the Court is equally, or more, concerned with counsels' blatant attempt to mislead this Court about G.W. Premier's role in this litigation. In the proposed Reply to Complainants' Memorandum in Opposition to Motion to Conduct

Jurisdictional Discovery [Rec. Doc. 27-5], which is not officially before the Court but which the Court nonetheless considered, counsel contend that Willstaff, Inc.'s principal business *used to be* in Monroe, Louisiana but is now in Elk Grove, Illinois. G.W. Premier's own exhibits belie this assertion.[3]

Enough is enough. As warnings and lesser sanctions in the past have failed to deter the firm of Ungarino & Eckert from its vexatious practices, the Court is left to consider whether a more major sanction is necessary to achieve the desired result. As the Court has found that G.W. Premier lacked an objectively reasonable basis for removal, plaintiffs' Motion for Attorneys' Fees and Costs [Rec. Doc. 10] pursuant to 28 U.S.C. §1447(c) will be granted. These fees, costs, and expenses shall be payable solely out of the pockets of attorneys Matthew Ungarino, who filed the initial removal, and William Eckert, who opposed the remand. However, as this type of sanction alone has proven insufficient in the past to deter the kind of vexatious conduct demonstrated in the case at bar, the Court will also order the firm of Ungarino & Eckert, through its principals, to file a memorandum, within ten (10) calendar days of the date of entry of the judgment which will issue herein, setting forth why the firm should not be sanctioned pursuant to Federal Rule of Civil Procedure 11(c) and/or 28 U.S.C. §1927 in an

---

[3] At the time of the accident and at all subsequent times, including the time of filing and service of the state court petition, Willstaff, Inc.'s principal place of business was in Monroe, Louisiana. *See Affidavit of Wayne Williamson* [Rec. Doc. 14-1]; *See also* Louisiana Secretary of State's Corporations Database, http://www400.sos.louisiana.gov/app1/paygate/crpinq.jsp.

amount greater than or equal to $25,000.  Upon consideration of Ungarino & Eckert's brief, the Court, if necessary and appropriate, will conduct a hearing for Ungarino & Eckert, its principals, and associates (collectively, the "Respondents") to show cause why the undersigned should not impose the sanctions contemplated hereinabove.  The Respondents will also be required to show cause why the undersigned United States District Judge should not recommend to the District Judges of the Western District of Louisiana that Respondents be barred from practicing in the Western District of Louisiana.  If such a hearing is conducted, all equity partners of Ungarino & Eckert, LLC, or their equivalents, as well as all associates of the firm shall be required to attend.

Counsel are to provide a copy of this ruling and the judgment that will issue to their client, G.W. Premier, by certified mail, return receipt requested, and are to certify to the Court that a copy has been so provided within five (5) calendar days of the date of entry of the memorandum ruling and judgment.  *G.W. Premier is cautioned that similar future conduct on its behalf by this law firm may result in sanctions against it as well.*  The Court will also order the Clerk of Court for the Western District of Louisiana to furnish a copy of this ruling and the judgment that will issue to each District and Magistrate Judge in the Western District of Louisiana to serve as any future occasion may require.

The undersigned is *always* loathe to consider the imposition of sanctions

against an attorney – especially sanctions that, based on the circumstances, may be heavy or onerous.  However, *based on the record of this proceeding,* given the extensive history of this firm and of these attorneys, the previous sanctions imposed, and the many "second chances" they have received, the Court finds that consideration of the sanctions set out above warranted and necessary to not only discourage, but to prevent further improvident removals to federal court by Ungarino & Eckert, its principals, and associates.