1

1              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF LOUISIANA
2                     LAFAYETTE DIVISION

3

WENDY G. HOLLIER, ET AL.          )    NO. CV 6:08-1382
4                                  )
               vs.                 )    JUDGE MELANCON
5                                  )
WILLSTAFF WORLDWIDE, INC., ET AL. )    MAGISTRATE JUDGE HILL
6

7
                        [SANCTION HEARING]
8

9           Transcript of Proceedings before The Honorable

10      Tucker L. Melancon, United States District Judge,

11      Lafayette, Lafayette Parish, Louisiana, commencing

12      on May 1, 2009.

13

Appearances of Counsel:
14
        For Matthew J. Ungarino,
15      William H. Eckert, and
        the Law Office of
16      Ungarino & Eckert:        MR. FRANCIS X. NEUNER, JR.
                                  MR. JED MICHEL MESTAYER
17                                Laborde & Neuner
                                  P. O. Drawer 52828
18                                Lafayette, LA 70505

19                                MR. KENNETH W. DeJEAN
                                  Office of Kenneth W. DeJean
20                                P. O. Box 4325
                                  Lafayette, LA 70502
21

22

23               Cathleen E. Marquardt, RMR, CRR
                 Federal Official Court Reporter
24                  Post Office Box 5056
                  Lafayette, Louisiana 70502
25                  Phone:  (337) 593-5223

2

1              (Lafayette, Lafayette Parish, Louisiana; May 1, 2009,

2     in open court.)

3                       (Call to order of the court.)

4              THE COURT:  Good morning.  Please be seated.

5              MR. NEUNER:  Thank you, Judge.

6              ATTORNEY:  Judge, thank you.

7              THE COURT:  The first matter before the Court today is

8     Civil Action Number 08-1382, Zeb Hollier versus Willstaff

9     Worldwide, Incorporated.  The matter that the Court is

10    considering today was set by an order -- or was designated in an

11    order dated February 3, 2009, requiring the law firm of Ungarino

12    & Eckert through its perceived to be principal partners, Matthew

13    Ungarino and William Eckert, who are counsel of record for G. W.

14    Premier, to file a memorandum setting out why the firm should not

15    be sanctioned in an amount of greater than or equal to $25,000,

16    among other things.

17            The record should reflect that the memorandum called

18    for was filed with the court.  The Court has reviewed that

19    memorandum.  That on April the 28th, after a regular fixing for

20    the status conference, the Court met with the attorneys for

21    Mr. Ungarino, Mr. Eckert, and the firm, who will be allowed to

22    introduce themselves shortly, to discuss the procedural posture

23    of the case.  And I believe it was at that -- after that

24    conference this hearing was set or the date had been mentioned.

25    Certainly was set at that point.

1           And with that somewhat disjointed introduction, the

2    Court would ask the attorneys involved in the case, representing

3    the principals and the firm, to identify themselves for record

4    purposes.

5           MR. NEUNER:  Thank you, Your Honor.  Frank Neuner and

6    Jed Ollier -- Jed Ollier -- Jed Mestayer with Laborde & Neuner

7    representing Matt Ungarino and Bill Eckert and the firm of

8    Ungarino & Eckert.  We also have Ken DeJean of the Law Offices of

9    Ken DeJean representing the same parties.

10          THE COURT:  All right.  And based on the status

11   conference that was conducted on April 28 and instructions that

12   were given therein, I take it that the gentleman that's seated

13   between you and Mr. DeJean would be Mr. Ungarino; is that

14   correct?

15          MR. NEUNER:  Yes, Your Honor.  This is Mr. Matt

16   Ungarino between Mr. DeJean and myself.

17          THE COURT:  All right.  And I believe, based on that

18   conference, Mr. Neuner, Mr. DeJean,you know, I know where I am.

19   Maybe you want to present what you want to present.

20          MR. NEUNER:  Yes, Your Honor.  Based on that conference

21   that we had Tuesday, Mr. Ungarino wishes to apologize to the

22   Court for this proceeding and accepts a sanction --

23          THE COURT:  Well, let me just -- you go ahead.  I don't

24   mean to cut you off, but I suspect -- in fact, I would strongly

25   urge that whatever apology Mr. Ungarino makes that he will make

1    for himself, so --

2              MR. NEUNER:  Yes, sir.  He's prepared to speak, Your

3    Honor.

4              THE COURT:  I understand that, and it's not to this

5    judge, but it is to this court.

6              MR. NEUNER:  Right.

7              THE COURT:  Okay.  But go ahead.  I didn't mean to get

8    you off track, but there were certain things that were discussed

9    and I -- frankly, I want to here from Mr. Ungarino.

10             MR. NEUNER:  Yes, sir.  Mr. Ungarino is prepared to

11   address the court and Your Honor.

12             If you want to go to the podium, Matt.

13             MR. UNGARINO:  Good morning, Judge.  And I am here to

14   apologize, Judge, for spending the court's time on this matter.

15   I did receive this file assignment, and I signed the analysis for

16   removal issue.

17             As the e-filer of record with regard to the notice of

18   removal, I accept full responsibility for its contents.  I now

19   realize under the circumstances and the facts of this case that

20   the inquiry conducted into the jurisdictional facts set forth in

21   the notice of removal was unreasonable.  I acknowledge that this

22   warrants a sanction.

23             I apologize to the Court and opposing counsel for this

24   improper removal, and I agree that this Court -- that the court

25   sanctions in this case are appropriate based on my conduct.  And

5

1    in this case and prior removal proceedings in the Western

2    District of Louisiana, the firm has undertaken significant

3    remedial measures.

4              First we retained Professors Dane Ciolino and Mary

5    Algero to provide the -- to provide the firm's attorneys with

6    additional education and training regarding legal ethics and

7    removal procedures.  Two seminars have been conducted at the

8    firm's offices -- at the firm's office in Metairie.

9              THE COURT:  If I can interrupt you, were all of the

10   attorneys who do work for your firm required to attend those

11   seminars?

12             MR. UNGARINO:  Yes, either live, Judge, or they had to

13   verify in writing that they reviewed the videotapes that were

14   forwarded to our offices.

15             THE COURT:  And how many actually were there live when

16   the videotapes were being made?

17             MR. UNGARINO:  You know, Judge, I don't -- I'm

18   guessing, Judge, off the top of my head, approximately 15, 16.

19             THE COURT:  How many firms do you have -- how many

20   lawyers do you have in your firm?

21             MR. UNGARINO:  25.

22             THE COURT:  Okay.  And again, I was familiar with this

23   at one point, but your firm has offices where?

24             MR. UNGARINO:  In Shreveport, Lafayette, Baton Rouge,

25   and the Metairie office serves New Orleans and then two offices

1    in Mississippi.

2              THE COURT:  Where in Mississippi?

3              MR. UNGARINO:  In Jackson and in Gulfport.

4              THE COURT:  Okay.  So it's your representation to me

5    that either in person or through video which was certified to by

6    the attorney who wasn't there live, that they actually viewed the

7    video, that every lawyer in your firm is familiar with whatever

8    it is the good professors had to say about ethics and the removal

9    jurisdiction issues?

10             MR. UNGARINO:  Yes, Your Honor.

11             THE COURT:  All right.

12             MR. UNGARINO:  And the seminar conducted by Professor

13   Ciolino concerning ethics was for three hours, and Professor

14   Algero's seminar regarding removal was for 2.5 hours.

15             And additionally, the firm has instituted internal

16   measures appointing a professional responsibility committee of

17   equity partners who coordinate in-house ethics and removal

18   training, review the form and content of all notices of removal

19   and opposition to remand, and otherwise serve as a ready resource

20   for ethics and removal issues.

21             The work of the Professional Responsibility Committee

22   will not be and has not been charged to any clients, but absorbed

23   internally by the firm.  And to date, the cost of these remedial

24   measures is approximately $7,662.16.

25             THE COURT:  All right.  And anything else you want to

1    say, Mr. Ungarino?

2              MR. UNGARINO:  No, Judge.  I certainly realize the

3    waste of the court's time on this, and I appreciate Your Honor's

4    time.

5              THE COURT:  Let me say this before I go ahead and do

6    what I'm going to do.  I wouldn't pretend to be in a position to

7    speak for any other judge of this court or any magistrate judge

8    of this court, and I'm going to make some specific findings in

9    just a minute, but I'm not sure why it took so long to learn the

10   lesson, but I really do believe, from what you have said here

11   today and what you did before you got here today, as far as

12   trying to bring your firm up to snuff, that you obviously got it,

13   and I believe that.  If I didn't believe it, I wouldn't say it,

14   and I might not do what I'm about to do.  But because I do

15   believe that, if there is a violation in the future -- and again,

16   I'm not -- wouldn't want to deter you or anybody in your firm

17   from zealously representing your clients' interests in the future

18   to the full extent of your ability to do so -- it would certainly

19   be a very, very heavy price to pay for this judge, and I would

20   suspect -- again, not speaking for my colleagues at the district

21   or magistrate judge level in the Western District.  I suspect it

22   would be a very, very, very heavy price to pay with them.

23             So, again, you have got the tools.  Your firm has

24   gotten the tools to be able to dot your Is and cross your Ts and

25   represent your clients to the fullest extent of the law

1    consistent with whatever ethical obligations that good lawyers

2    should use in their zealous representation of their client.  So,

3    like I say, it's a good thing, but it's a double-edged sword, and

4    I'm sure you understand that.  I trust that the other attorneys

5    in your firm understand that.

6              MR. UNGARINO:  Yes, Your Honor.

7              THE COURT:  The Court finds that Mr. Matthew Ungarino

8    failed to conduct a reasonable inquiry under the circumstances

9    prior to the removal of this matter to federal court, as admitted

10   here today by Mr. Ungarino, based on the record of the

11   proceeding, as well as the filings that were made pursuant to the

12   Court's order.

13             The -- as a result of the improper removal, as well as

14   the record in this case, and prior removal activity in the

15   Western District of Louisiana, this Court will impose, because I

16   think it's proper under the circumstances, a sanction in the

17   minimum amount that the Court's order of

18   February 3rd contemplated in the sum of $25,000.  And that's to

19   be payable to the Clerk of Court and it's to be payable

20   immediately.  And in that regard, I would request that

21   Mr. Ungarino or his attorneys present a check to Ms. Jordan here,

22   my courtroom deputy, in that amount.  Ms. Jordan right here

23   (indicating).

24             Additionally, the Court finds that, pursuant to 28

25   United States Code, Section 1447(c), attorney fees in the amount

1    of $7,650 representing 34 hours of work, as attested to by

2    plaintiff's counsel, Miles Matt, at the rate of $225 an hour, be

3    paid to plaintiff's counsel, and that is to be payable

4    immediately.  And I would like to make sure that a check for that

5    amount is likewise tendered to Ms. Jordan here today for her to

6    make sure Mr. Matt gets the check.  Are you prepared to do that

7    today?  You've done that already?

8              COURTROOM DEPUTY:  Yes, I have it.

9              THE COURT:  All right.  Now the Court also makes a

10   specific finding that, based on the nature of the conduct at

11   issue, the acceptance of responsibility by Mr. Ungarino, the

12   remedial measures taken by the law firm of Ungarino & Eckert,

13   that the sanction that is imposed here today, as far as this

14   Court is concerned, will conclude the matter.

15             The Court specifically finds and is of the opinion that

16   the sanction imposed by the Court is significant, and along with

17   the remedial actions that were taken by the firm that is -- I

18   don't know on whose advice they took the actions they took, the

19   specific actions they took, but I will tell you that they hit the

20   nail on the head, and the significant cost of $7,662.16 at a

21   minimum that has been incurred will alleviate the issues in the

22   future, should alleviate the issues in the future that the

23   Court's February 3rd ruling expressed concern about.  And again,

24   as I said, I do not feel that any further disciplinary action in

25   relationship to the conduct covered in the February 3rd order is

1    warranted or necessary.

2           And I know we all learn as we go along.  Some of us

3    learn a lot more quickly than do others.  And again,

4    Mr. Ungarino, I want you to understand that -- again, I'm not

5    speaking for any of my colleagues -- I firmly believe it will

6    never be an issue for you or any member of your firm that was a

7    present member when this situation came up will ever have a

8    problem, not only in this district, but I would probably think in

9    the Middle District or the Eastern District either because, as

10   you well know, in the age of the internet with e-filing and the

11   great technology that we have, I'm sure that if it comes up in

12   either of those two jurisdictions or probably in the state of

13   Mississippi, too, either of those jurisdictions, that you'll be

14   facing somebody else.  And I don't believe that for a second that

15   you or anybody in your firm will, or I wouldn't be doing what

16   I've done here, but just forewarned is forewarned, whatever.

17          All right.  Is there anything else the Court need

18   consider in this matter at this time from either Mr. Neuner or

19   Mr. DeJean?

20          MR. NEUNER:  No, Your Honor.

21          MR. DeJEAN:  No, Your Honor.

22          THE COURT:  All right.  The Court is going to go ahead

23   and sign a judgment.  And if you all want to wait around, you may

24   do so.  It will take Ms. Jordan a few minutes, but you may want

25   to do that, maybe you don't.

11

```
 1              Ms. Jordan, here is the judgment that I've signed in

 2    keeping with what I said here for the oral reasons assigned.  And

 3    we'll -- you may want to get them copies.  Can you certify those

 4    up here?  Have you got your little machine, or you got to go

 5    downstairs?

 6              COURTROOM DEPUTY:  Go downstairs.  I don't have a seal.

 7              THE COURT:  I'm sorry?

 8              COURTROOM DEPUTY:  I'll have to go downstairs.

 9              THE COURT:  Okay.  Well, it may take her a few minutes,

10    and Ms. Jordan has got about two things to do with me.

11              So, Ms. Jordan, how long should I tell them before they

12    go down to the Clerk's Office?

13                   (Conferring with courtroom deputy.)

14              THE COURT:  Okay.  Ten minutes she'll see you down

15    there.

16              And Ms. Jordan, one other thing.  I'd like for you to

17    make sure that Mr. Matt understands that you have the possession

18    of his check, and if he wants to send somebody over here today to

19    pick it up, he can do so.  If not, you can put it in the mail to

20    him, his choice.

21              COURTROOM DEPUTY:  Okay.

22              MR. NEUNER:  Yes, Your Honor.  I put a phone call in to

23    Mr. Matt and so advised him this morning.  I haven't heard

24    back --

25              THE COURT:  All right.
```

12

1            MR. NEUNER:  -- but I will -- as soon as I do, I will

2     also convey that message.

3            THE COURT:  Thank you very much.  All right.  We're in

4     recess.

5                       (Hearing concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          C-E-R-T-I-F-I-C-A-T-E

2

3    UNITED STATES DISTRICT COURT

4    WESTERN DISTRICT OF LOUISIANA

5    LAFAYETTE DIVISION

6

7

8              I, Cathleen E. Marquardt, RMR, CRR, Federal Official

9    Court Reporter, do hereby certify that the foregoing pages 1-12

10   constitute a true transcript of proceedings had before the said

11   Court held in the city of Lafayette, Lafayette Parish, Louisiana,

12   in the matter therein stated.

13             In testimony whereof, I have hereunto set my hand

14   on this 14th day of May, 2009.

15

16

17

18                              s/*Cathleen E. Marquardt*
                                Cathleen E. Marquardt, RMR, CRR
19                              Federal Official Court Reporter
                                Post Office Box 5056
20                              Lafayette, Louisiana 70501
                                Phone: (337) 593-5223
21

22

23

24

25